UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL WAYNE JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>JOE A. LIZARRAGA, *et al.*,<br><br>Defendants. | Case No. 2:18-cv-03101-JAM-JDP (PC)<br><br>FINDINGS AND RECOMMENDATIONS THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>ECF No. 39 |

Plaintiff alleges that his two supervisors at the California Prison Industry Authority's Coffee Roasting facility, defendants Reynolds and Vernon, were deliberately indifferent to his serious medical needs by refusing to release him from work so that he could get his ulcerative colitis medication. Defendants move for summary judgment, arguing that they were not aware of plaintiff's medical condition and, therefore, could not have acted with deliberate indifference. Additionally, they claim qualified immunity. I recommend granting defendants' motion.

**Background**

Plaintiff has ulcerative colitis, a condition that can cause inflammation and ulceration of the colon and rectum. ECF No. 39-7 at 4. His treatment included taking Sulfasalzine three times a day, including once at 11:00 a.m. ECF No. 44 at 3, 10. Failure to take the medication consistently and as prescribed can result in abdominal pain, diarrhea, and rectal bleeding. ECF No. 39-7 at 10.

1

1     In October 2017, plaintiff interviewed for a coffee roaster position with California Prison
2 Industry Authority's Coffee Roasting ("CalPIA Coffee"). *Id.* at 5. During the interview, he
3 notified one of the defendants—he does not recall which—that he needed to be released at 11:00
4 a.m. to get medication.[1] *Id.* at 6. He also testified that the interviewer called the medical clinic to
5 confirm that he did have to take medication at 11:00 a.m. *Id.*

6     CalPIA Coffee's policy allows inmates to leave work to take medication if they provide
7 documentation confirming that they need to be released. ECF No. 39-4 at 2. Because CalPIA
8 Coffee does not have access to inmates' medical files, it is incumbent on the inmates to provide
9 verification. *Id.* If, however, an inmate has not provided verification, a CalPIA Coffee
10 supervisor can call the medical clinic to verify the inmate's release.[2] *Id.* When verification is
11 sought by a supervisor, the medical clinic does not disclose specific information about the
12 inmate's medical condition or medication. *Id.* However, even when a supervisor personally
13 confirms an inmate's need for release, CalPIA Coffee still requires the inmate to provide the
14 necessary documentation at their next shift. *Id.*

15     Plaintiff was offered a position and commenced working at CalPIA Coffee in October
16 2017. *Id.* Plaintiff alleges that he informed both defendants that he needed to get medication at
17 11:00 a.m. and that both called to confirm that he received medication at 11:00 a.m. on separate
18 occasions. ECF No. 40-1 at 9. During the first seven months of his employment, he was

---

[1] Defendants' declarations and motion consistently focus on whether plaintiff was denied "noon medication release." *See, e.g.*, ECF No. 39-2; ECF No. 39-4 at 2; ECF No. 39-5 at 2. Plaintiff, however, testified at his deposition that his claims are premised on defendants' failure to release him at 11:00 a.m., not noon. Depo. at 23, 31, 37. His complaint and opposition also emphasize that he needed to take his medication at 11:00 a.m. *See generally*, ECF Nos. 11, 44. Plaintiff's claims are based on defendants' failure to release him to take his mid-day pill—not that he was required to wait an extra hour to receive his medication. Accordingly, the discrepancy as to when plaintiff needed to take his mid-day pill is not material to resolution of defendants' motion.

[2] Defendants' evidence is somewhat ambiguous as to whether, in the absence of documentation, the supervisor must obtain verbal verification prior to each release. *Compare* Depo. at 22 *with* Depo. at 26. However, plaintiff's testimony reflects that Reynolds made multiple calls for verification during his tenure at CalPIA Coffee. Depo. at 40. Some evidence suggests that in lieu of documentation, verbal verification was needed, although other evidence indicates that the practice might not have always been followed. *See, e.g.*, ECF No. 40-1 at 12, 16.

2

1 generally able to leave work to obtain his medication from the pill line. *Id.* at 16-17. Plaintiff
2 stated that he complained to defendant Reynolds several times about missing his medication,
3 explaining that his medication was critical. *Id.* at 18-19. However, plaintiff stated in his
4 deposition that he did not provide either defendant with any medical documents indicating that he
5 needed to be released for midday medications. ECF No. 39-7 at 11.

6 According to plaintiff, that changed on April 14, 2018. ECF No. 40-1 at 25-26. On that
7 day, he lined up for the 11:00 a.m. pill line, but Reynolds refused to release him because he did
8 not have a ducat (paperwork confirming the need for release). *Id.* Plaintiff went back to work
9 and took his medication when his shift ended at 3:00 p.m. *Id.* at 26. Thereafter, he claims that
10 defendants refused to release him almost every day until he quit on May 8. *Id.* at 27. Shortly
11 after May 8, he had an ulcerative colitis flare-up, resulting in cramps, abdominal pains, and rectal
12 bleeding. *Id.* at 30.

13 Reynolds claims that on May 8, when plaintiff lined up for the 11:00 a.m. pill line, she
14 noticed that there was nothing in his file indicating that he had a medical release. ECF No. 39-5
15 at 2. When she asked him why he needed to be released, he stated he had "colitis." *Id.* Reynolds
16 released plaintiff for pill line, but when she called the medical clinic, they were unable to verify
17 that he needed to be released. *Id.* at 2-3. Later that afternoon, plaintiff entered the supervisors'
18 office and informed defendants that he wanted to request a job change; he yelled curse words at
19 both defendants. *Id.* at 3. When plaintiff did not calm down, custody staff removed him, and he
20 never returned to work at CalPIA Coffee. *Id.*

## Legal Standards

### A.     Summary Judgment

23 Summary judgment is appropriate where there is "no genuine dispute as to any material
24 fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington*
25 *Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). An issue of fact is genuine
26 only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party,
27 while a fact is material if it "might affect the outcome of the suit under the governing law."
28 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computs., Inc.*, 818

1  F.2d 1422, 1436 (9th Cir. 1987).

2  Rule 56 allows a court to grant summary adjudication, also known as partial summary
3  judgment, when there is no genuine issue of material fact as to a claim or a portion of that claim.
4  *See* Fed. R. Civ. P. 56(a); *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule
5  56 authorizes a summary adjudication that will often fall short of a final determination, even of a
6  single claim . . . .") (internal quotation marks and citation omitted).  The same standards apply
7  both to a motion for summary judgment and a motion for summary adjudication.  *See* Fed. R. Civ.
8  P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

9  Each party's position must be supported by (1) citations to particular portions of materials
10  in the record, including but not limited to depositions, documents, declarations, or discovery; or
11  (2) argument showing either that the materials cited do not establish the presence or absence of a
12  genuine factual dispute or that the opposing party cannot produce admissible evidence to support
13  its position.  *See* Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The court may consider
14  materials in the record not cited by the parties, but it is not required to do so.  *See* Fed. R. Civ. P.
15  56(c)(3); *Carmen v. San Francisco Unified Sch. Dist*., 237 F.3d 1026, 1031 (9th Cir. 2001); *see
16  also Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

17  "The moving party initially bears the burden of proving the absence of a genuine issue of
18  material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To meet its burden, "the
19  moving party must either produce evidence negating an essential element of the nonmoving
20  party's claim or defense or show that the nonmoving party does not have enough evidence of an
21  essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins.
22  Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  If the moving party meets this
23  initial burden, the burden then shifts to the non-moving party "to designate specific facts
24  demonstrating the existence of genuine issues for trial."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d
25  376, 387 (citing *Celotex Corp.,* 477 U.S. at 323).  The non-moving party must "show more than
26  the mere existence of a scintilla of evidence."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477
27  U.S. 242, 252 (1986)).  However, the non-moving party is not required to establish a material
28  issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to

require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).

The court must apply standards consistent with Rule 56 to determine whether the moving party has demonstrated there to be no genuine issue of material fact and that judgment is appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley,* 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted). The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

### B.     Eighth Amendment Deliberate Indifference

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The two-prong test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992)). "This second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* (citing *McGuckin*, 974 F.2d at 1060).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "If a prison official should have been aware of the risk, but was not, then the official

5

1    has not violated the Eighth Amendment, no matter how severe the risk." *Id.* (quoting *Gibson v.*
2    *Cnty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

**Analysis**

Neither party disputes that plaintiff has a serious medical need. *See Doutre v. Aranas*, No. 212-cv-00772-RFB-VCF, 2014 WL 5047563, at *6 (D. Nev. Oct. 8, 2014) (finding that a diagnosis of ulcerative colitis satisfied the first prong of the deliberate indifference test). But as for the subjective prong, there is no evidence that defendants were aware of plaintiff's serious medical need. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("To demonstrate deliberate indifference, plaintiffs must show that [prison officials] were (a) *subjectively aware* of the serious medical need and (b) failed to adequately respond.") (internal quotation marks omitted) (italics in original).

Plaintiff first informed either Reynolds or Vernon that he needed to be released for pill line during his October 2017 interview, but he neither provided documentation of his need to be released nor communicated the severity of his disease. ECF No. 39-7 at 6, 11. When, on a handful of occasions between October 2017 and April 2018, defendants refused to release plaintiff for pill line, he told defendant Reynolds that it was critical that he receive his medication; however, again he neither provided proof of his need for release nor communicated the severity of his condition. *See* ECF No. 40-1 at 19; ECF No. 39-7 at 11. He claims that between April 14 and May 7, defendants consistently denied his release—but still he did not provide them with verification or communicate the risk associated with not receiving his medication. *See* ECF No. 40-1 at 27. It was not until May 8, 2018, the day when he quit, that plaintiff told Reynolds that he needed to be released because of his "colitis." ECF No. 39-5 at 2. And she released him—even though he did not provide her with verification of his release, and she was not able to confirm his release with the medical clinic. *Id.*

At most, defendants knew that plaintiff had claimed that his medication was "critical" and that he typically took it at midday. However, he testified that he never provided them with medical documentation indicating that he needed to be released or that the medication was for a serious illness. Plaintiff also never alleged that he was unable to obtain verification of his need

for release.  Absent additional verification, there is no evidence based on which a reasonable jury could find that defendants knew of and disregarded a serious risk to his health.  *See Martin v. Woodford*, No. 1:08-cv-00415-LJO, 2011 WL 39114, at *10-14 (E.D. Cal. Jan. 5, 2011), *subsequently aff'd*, 503 F. App'x 530 (9th Cir. 2013) (granting summary judgment on a deliberate indifference claim because there was no evidence that the defendant knew that the plaintiff had a serious need for a medication and deliberately ignored it).

Accordingly, it is hereby RECOMMENDED that:

1. defendants' motion for summary judgment, ECF No. 39, be granted;

2. judgment be entered in defendants' favor and against plaintiff; and

3. the Clerk of Court be directed to close the case.

I submit these findings and recommendations to the district judge under 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  The parties may, within 14 days of the service of the findings and recommendations, file written objections to the findings and recommendations with the court.  Such objections should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C).

IT IS SO ORDERED.

Dated:   February 28, 2022

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE